**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID SADLER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-4678** |
| | : | |
| **APPLE INC.,** | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

**HENRY, J.**                                                                              **May 26, 2026**

In previous decisions, the Court dismissed David Sadler's original Complaint and

Amended Complaint against Apple Inc. ("Apple") alleging claims under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12203, because he failed to allege plausible

claims for wrongful termination and failure to accommodate.  *Sadler v. Apple Inc.*, No. 25-4678,

2025 WL 2792129 (E.D. Pa. Sept. 29, 2025) ("the September Memorandum"); *Sadler v. Apple*

*Inc.,* No. 25-4678, 2025 WL 3707307, (E.D. Pa. Dec. 22, 2025) ("the December

Memorandum").  Sadler was granted leave to file a second amended complaint if he was able to

plead additional facts to cure the defects identified in his claims.  He filed a Second Amended

Complaint (ECF No. 10 ("SAC")) that fails to do so.  Accordingly, the case will be dismissed

with prejudice.

**I.      FACTUAL ALLEGATIONS**[1]

---

[1] The facts are taken from the SAC.  The Court adopts the pagination assigned to the
Complaint by the CM/ECF docketing system.

Sadler asserts that he suffers from major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and severe chronic or intractable pain of neuropathic origin, all stemming from childhood trauma and abuse. (SAC at 5.) Sadler alleges these disorders impact his ability to care for himself, sleep, concentrate, think, communicate, and work. (*Id*.) They also impact his digestive, bowel, neurological, and endocrine functions. (*Id*.) Sadler states that his disabilities and associated symptoms are "often exacerbated in situations in which there are greater than ten people in a physical room." (*Id*.)

Sadler began working for Apple in August 2018 as a Specialist. (*Id*.) He notified the company in October 2018 of his status as an individual living with a disability by filling out a Voluntary Self-Identification of Disability form. (*Id*.) Sadler asserts that from the time he was hired until the time he was terminated on January 31, 2024, he "consistently met or exceeded performance expectations as a specialist and later, Expert, as evidenced by promotions, career experience participation, and positive evaluations." (*Id*.) For example, in the second quarter of 2020, the sales section of the Apple store where Sadler worked, and for which he was partly responsible, received the highest customer satisfaction metrics among Apple stores in the area. (*Id*. at 6.) Sadler himself "often led Customer Satisfaction metrics with 100% customer satisfaction measured via a net promoter score (NPS) system." (*Id*.) Sadler began suffering from increasingly severe mental health problems, including worsening anxiety, more frequent and longer lasting migraines, more frequent "pseudo seizure episodes," and episodic suicidal ideation, which required him to take time off from work. (*Id*.) This included being hospitalized for approximately one week in 2020 for mental health treatment, of which his managers at Apple were aware. (*Id*.)

2

In May 2020, while most Apple stores were closed due to the COVID-19 pandemic, Sadler was selected for a Retail Contact Center ("RCC") position, which was based at home. (*Id*.) Sadler received praise from RCC leaders for his work performance and was recommended for a position as a Subject Matter Expert with the RCC, which was also a work from home position. (*Id*.) Eventually, retail stores reopened and in February 2021 Sadler returned to his in-store role as an Expert. (*Id*.) His mental health symptoms, which had been "alleviated and not problematic" during his time working from home, began to recur around this time. (*Id*.) In April 2021, Sadler applied and was selected for a 6-month "in-store experience" at Apple's Park City Store.[2] (*Id*.) His position as an In-Store Experience Training Lead permitted a hybrid of in-person and remote work. (*Id*.) It is not entirely clear from the Complaint, but Sadler appears to have returned to his role as an Expert at the end of this 6-month position. (*See id*. at 8) (noting that at the time he was terminated in January 2024, Sadler had been "an Expert with Apple Park City").

As government mandates related to COVID-19 were loosened, Sadler's symptoms began to "severely flare up." (*Id*. at 6.) In January 2023, in the face of these difficulties, Sadler spoke with his supervisor, Store Leader Michael Washington, about the need for an unspecified accommodation. (*Id*.) Washington informed Sadler that "store accommodations were not possible" and that the only option was to go on short-term disability through Sedgwick, Apple's third-party leave administrator. (*Id*. at 7.) As a result of that conversation, Sadler applied for and was granted short-term disability from February 8, 2023 to May 1, 2023. (*Id*.) On April 14, 2023, Sadler applied for a reasonable accommodation to "change his work environment," using

---

[2] The Court presumes that Sadler is referring to the Apple Park City store in Lancaster, Pa.

Apple's electronic accommodation request form.[3]  (*Id*.)  Washington and Senior Store Manager Kimberly Romano met with Sadler and informed him that his request was being denied because "the program that would have been able to support the accommodation [presumably the pandemic-era RCC] was closed."  (*Id*.)  Sadler asked Washington if there was any accommodation that could be provided, and Washington said that no accommodation could be provided at the retail store.  (*Id*.)

Around the same time, Sadler's application to continue on short term disability was also denied.  (*Id*.)  A Sedgwick representative told Sadler that his application was denied because there were accommodations available to him in his role at Apple, making him ineligible for short-term disability.  (*Id*.)  Sadler contacted Apple's corporate HR department, and a representative confirmed that the work from home accommodations were granted to other employees in Sadler's role at other Apple locations, "prior to COVID-19, presently, and with plans to continue supporting in the future after COVID-19."  (*Id*.)  The representative was unable to explain the reasons for his denial, but suggested that Sadler resubmit his request in September 2023. (*Id*.)  Sadler did so, but his request was again denied by Washington and Romano.  (*Id*.) When Sadler sought to appeal the decision, Washington gave him an "ultimatum": either (1) Sadler could accept a 30-day paid job search where he would be assisted in finding another position at the company that could accommodate his needs; or (2) he could remain on unpaid medical leave until the leave was exhausted and Sadler no longer needed an accommodation. (*Id*.)  On October 26, 2023, Sadler selected the 30-day paid job search but states that afterwards

---

[3] The exact nature of the requested accommodation is not stated.  Sadler asserts that his "care team" suggested that he work from home, but he does not specifically state that this was the nature of the accommodation he requested.  (SAC at 7.)  Nonetheless, the Court will liberally construe the allegation of "change his work environment" to be a request to work at home since the RCC program he references was a work from home position.

"[n]o communication, direction, or accommodation was received" from Apple or its employees until he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 4, 2024.  (*Id*. at 8.)  At the time he filed the EEOC charge, he believed he was no longer employed by Apple.  (*Id*.)  On January 31, 2024, Sadler received a formal notice of termination from Apple.[4]  (*Id*.)

By checking boxes on the form complaint he used, Sadler asserts claims under the ADA for discriminatory termination, failure to accommodate, and retaliation.  (*Id*. at 3-4.)  He attached to the SAC a copy of the Notice of Right to Sue Letter issued to him by the EEOC on or about May 21, 2025.  (*Id*. at 13.)  Sadler seeks to have the Court "provide re-hire eligibility" with Apple, to have entries from his master personnel file removed, and to be awarded lost wages, front pay, various damages, costs, and fees.  (*Id*. at 10.)

## II.    STANDARD OF REVIEW

Because the Court granted Sadler leave to proceed *in forma pauperis*, his case remains subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  This requires the Court to screen and dismiss the SAC if it fails to state a claim.  The Court must determine whether the SAC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, the Court will accept the facts alleged in the pro se complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th

---

[4] Sadler notes that he received a voicemail from Sedgwick on October 24, 2025, nearly two years after he was terminated, stating that a decision was still pending on his appeal of the denial of his short-term disability.  (SAC at 8.)  In light of this message, Sadler states he is "unsure as to my actual status within the company," but appears to acknowledge that his employment with Apple ended in January 2024.  (*Id*.)

366, 374 (3d Cir. 2021) (cleaned up), ab*rogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a pro se litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.*

## III.    DISCUSSION

In the September and December Memoranda, the Court provided Sadler with the information he needed to allege plausible discriminatory discharge and failure to accommodate claims. *See* September Memorandum, 2025 WL 2792129, at 2-3; December Memorandum, 2025 WL 3707307, at *2-4. He was granted permission to file a new version of his pleading to allege additional facts to cure the defects identified in each of these claims. He has failed to do so. He also asserts a new retaliation claim against Apple, which for reasons discussed below, is also not plausible.

### A.    Failure to Allege Plausible Discriminatory Discharge and Failure to Accommodate Claims

In the Amended Complaint, Sadler alleged that he has a disability within the meaning of the ADA, and that he suffered an adverse employment action, but did not allege facts indicating that he was a *qualified* individual with a disability under the two-prong test set forth by the

United States Court of Appeals for the Third Circuit.[5]  December Memorandum, 2025 WL 3707307 at *2.  In particular, while Sadler alleged that he met the educational and experience requirements for his position as an Expert, he did not allege he was able to perform the functions of his position with or without accommodation.  *Id.*  Sadler again fails to do so in the SAC.

Sadler documents the success he achieved in various roles for Apple, asserting that from the time he was hired until he was terminated, he "consistently met or exceeded performance expectations," as evidenced by positive performance reviews and promotions.  (SAC at 5.)  But he asserts that his mental health symptoms became so severe by January 2023 that he was required to take a leave of absence of several months.  (*Id*. at 6.)  Sadler does not allege that he could have performed the essential functions of his job *with* his requested accommodation.  He details at length his numerous communications with his in-store managers, Apple's People Team, and Sedgwick regarding his request for a work from home accommodation.  (*See id*. at 6-8.)  But he does not discuss what his job responsibilities were at the time of his requested accommodation[6] or how working from home would have permitted him to perform them.  Sadler only notes that other Apple employees in his role at other stores were permitted to work from home.  But this is insufficient to allege that *Sadler* could fulfill the essential functions of his position remotely in light of his disabilities.  *See Andrews v. Highmark Health*, No. 22-917, 2022

---

[5] That test asks whether (1) the individual satisfies the prerequisites for the position, by possessing the appropriate educational background, employment experience, skills and licenses; and (2) whether the individual can perform the essential functions of the position, with or without reasonable accommodation.  *Gaul v. Lucent Techs*., 134 F.3d 576, 580 (3d Cir. 1998)).

[6] Notably, Sadler states that his "main responsibilities were to assist customers with all things Apple related and provide a world class customer experience for shopping in addition to training new hire employees in the sales floor area and leading development trainings for existing store employees."  (SAC at 6.)  But he does not provide a time frame for this description of his responsibilities or how, if at all, his responsibilities changed over the course of his employment as he assumed different roles and levels within the company.

7

WL 14672734, at *7 (W.D. Pa. Oct. 25, 2022) (dismissing disability discrimination claims where plaintiff's complaint "contains no allegations about the position, its essential functions, or her ability to perform such functions"); *see also Drummer v. Trs. of Univ. of Pa.*, 286 F. Supp. 3d 674, 683 (E.D. Pa. 2017) (dismissing disability discrimination claim where "Plaintiff has not clearly alleged the requirements of his position, the nature of his disability, or that he was otherwise qualified for his position despite his disability.").

Sadler has also failed to allege a failure to accommodate claim.  The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(b)(5)(A).  Discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).  To state a plausible failure to accommodate claim under the ADA, a plaintiff must allege: "(1) she was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated."  *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (citation modified); *Taylor*, 184 F.3d at 319-20; ; *see also* September Memorandum, 2025 WL 2792129 at *2; December Memorandum, 2025 WL 3707307 at *3.  An employee requests an accommodation when he makes his handicap known and announces a desire for assistance.  *Armstrong*, 438 F.3d at 247.

Sadler alleges that for part of 2020 during the pandemic, he successfully worked remotely in two roles for the Retail Contact Center, and that his mental health symptoms were "alleviated" by working from home.  (SAC at 6.)  In January 2023, he spoke with Store Leader Washington regarding "a need for accommodation" – otherwise undescribed – due to his disabilities, and was told that "store accommodations were not possible," but he could take short term disability leave. (*Id*. at 6-7.)  Read liberally, to the extent Sadler cites his earlier work from home period as an allegation that he was permitted to do so as an accommodation, the allegation does not speak plausibly to whether Sadler could reasonably be permitted to work remotely as an accommodation to his job as an Expert nearly three years later.

Despite multiple opportunities to do so, Sadler fails to allege that he was a qualified individual with a disability under the ADA.  Without more, Sadler's discriminatory discharge and failure to accommodate claims are not plausible and will be dismissed with prejudice.  *See Equal Emp. Opportunity Comm'n v. FedEx Ground Package Sys., Inc*., 158 F. Supp. 3d 393, 399 (W.D. Pa. 2016) (noting that "[a] predicate to claims under the ADA (including failure to accommodate claims) is that claimants must be 'qualified individuals with disabilities'"); s*ee also Andrews*, 2022 WL 14672734 at *7-8 (dismissing disability discrimination and failure to accommodate claims where, inter alia, plaintiff failed to allege she was a qualified individual with a disability).

### B.    ADA Retaliation Claim

Sadler also asserts a claim for retaliation under the ADA, which was not part of his prior pleadings.  The ADA retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]

or because such individual made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).[7]  To state a retaliation claim under the ADA, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal:  (1) that he engaged in a protected employment activity under the ADA; (2) that his employer took an adverse employment action against him; and (3) a causal link between the protected activity and the adverse employment action.[8]  *Krouse*, 126 F.3d at 500; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  To demonstrate a causal connection, a plaintiff generally must allege either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Goodwin v. Univ. of Pa.*, No. 23-3211, 2024 WL 4678877, at *3 (3d Cir. Nov. 5, 2024) (affirming grant of summary judgment of ADA retaliation claim where plaintiff did not show (1) "unusually suggestive temporal proximity" between her accommodation requests and her termination, or (2) "a pattern of antagonism coupled with timing." (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Sadler alleges that he filed a charge of discrimination with the EEOC on January 4, 2024 and received a notice of termination on January 31, 2024.  He asserts that Apple's retaliatory motive was evident from the "close proximity" between the two events.  (SAC at 8.)  However,

---

[7] Because this provision is similar to Title VII's prohibition of retaliation, s*ee* 42 U.S.C. § 2000e-3(a), courts analyze ADA retaliation claims under the same framework used for retaliation claims arising under Title VII.  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing cases).

[8] "Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that [s]he is a 'qualified individual with a disability.'  By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA."  *See Gavurnik v. Vantage Labs, LLC*, No. 19-5537, 2020 WL 12729778, at *2 (E.D. Pa. June 26, 2020) (citing cases).

courts in this Circuit have not typically found that a lapse of 27 days between protected conduct and an adverse employment action is sufficient to allege "unusually suggestive" temporal proximity. *See, e.g., Rooks v. Alloy Surfaces Co., Inc.*, No. 09-839, 2010 WL 2697304, at *2 (E.D. Pa. July 6, 2010) ("[W]hen a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity.") (quoting *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)). Beyond this purported "close proximity" between protected conduct and his termination, Sadler does not allege other facts indicating a retaliatory motive. By the time he filed the charge of discrimination with the EEOC in January 2024, Sadler's paid 30-day job accommodation had elapsed, he had not worked at Apple as an Expert since February 2023, and Sadler himself believed he was no longer employed by Apple. (SAC at 7-8.) Moreover, Sadler does not allege any facts indicating that the Apple staff responsible for terminating him were aware that he had filed a charge with the EEOC, as required to allege that the two were causally connected. *See Bishop v. United States Dep't of Agric.*, 725 F. App'x 165, 167-68 (3d Cir. 2018) (dismissing Title VII retaliation claim where plaintiff "failed to make a plausible allegation that any hiring official [at his prospective employer] had knowledge of his prior protected activity. . . . Therefore, [plaintiff] failed to plead the requisite causal connection between his participation in the protected activity and the adverse employment action.") (citing *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (explaining that "[i]t is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct"). Nor does Sadler allege a pattern of antagonism that, coupled with timing, could allege causation plausibly. *See Solanki v. Ashland, LLC,* No. 23-22638, 2026 WL 207249, at *4 (D.N.J. Jan. 27, 2026) (dismissing FMLA retaliation claim where plaintiff "does not identify hostile statements,

11

differential treatment, or any other facts suggesting retaliatory animus toward Plaintiff for taking FMLA leave."). Taken together, Sadler's factual assertions do not allege a plausible retaliation claim. Given Sadler's detailed factual narrative and his prior opportunities to amend, the Court finds that leave to amend this claim is not warranted.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Having previously provided Sadler with the law governing his claims and provided him an opportunity to cure the defects the Court identified, no further leave to amend will be granted. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"); *Posey v. Klinefelter*, No. 25-1428, 2025 WL 1937084, at *2 (3d Cir. July 15, 2025) (affirming dismissal where the "District Court's orders and the Magistrate Judge's reports and recommendations all informed Posey as to the ways in which the complaints were deficient and provided multiple opportunities to amend, and yet Posey repeatedly failed to do so"). An appropriate Order dismissing this case with prejudice will be entered separately. *See* Fed. R. Civ. P. 58(a).